## LIFE INSURANCE COMPANY *v.* BANGS.

Where there has been no newly discovered evidence, a bill in equity will not lie
to cancel a contract or enjoin a judgment thereon, where the complainant,
against whom it was rendered, sets up as grounds of relief matters which he
had full opportunity to plead in the action at law.

APPEAL from the Circuit Court of the United States for the
District of Minnesota.

The facts are stated in the opinion of the court.

*Mr. Herbert L. Baker* and *Mr. William A. Maury* for the
appellant.

*Mr. Mark S. Brewer* for the appellee.

MR. JUSTICE FIELD delivered the opinion of the court.

In the case of *Insurance Company* v. *Bangs, supra*, p. 435, we
had occasion to mention and comment upon a suit in equity,
commenced in March, 1876, by the same company against these
defendants, in the Circuit Court of the United States for the
District of Michigan, to obtain the cancellation of two poli-
cies of insurance, issued in November, 1875, upon the life of
James H. Bangs. That case was an action at law upon the
policies, to which the company pleaded the decree obtained in
the equity suit. This decree was held to be void as against
the infant defendant, because rendered by the court without
having obtained jurisdiction over him. As all other defences
except such as arose upon this decree were withdrawn, judg-
ment was rendered in favor of the plaintiff for the amount
claimed.

The present suit is similar in its character and object to the
one brought in the Michigan district. It seeks a cancellation
of the two policies of insurance obtained by the deceased and
an injunction against the enforcement of the judgment recov-
ered in the action at law. The bill avers that the policies were
obtained upon representations that the insured was a person of
good health and not subject or predisposed to any bodily in-
firmity; that at the time he applied for the policies he had
conceived the design to commit suicide, but first to obtain an

insurance upon his life in favor of his son in order to leave a large amount to him and to his wife ; that in pursuance of this design the policies were obtained, and soon afterwards he committed suicide by taking poison; and that the wife and son were cognizant of the design of the deceased and conspired with him for its execution.

The bill charges a fraudulent purpose on the part of the insured to rob the insurance company, and then that he committed suicide to carry the purpose into execution.    It charges a conspiracy between him and his wife and son to effect this robbery and death, — a conspiracy on the part of the wife to aid in the death of her husband, and on the part of the son to aid in the death of his father.    These charges are of such dreadful crimes as to call for the clearest proof before a decree cancelling the policies could be based upon them.    Instead of such proofs there is nothing of importance established which is not consistent with the integrity of all the parties, — insured, wife, and son.    The main and essential fact averred in the company's case is the contemplated suicide of the insured.    The evidence to establish this — and it is stronger than the evidence produced upon any other material averment — is that he had inquired for insurance companies whose policies did not except death by suicide ; that his death occurred not long after the policies were obtained, and was accompanied by convulsions stated to be similar to those attending death by strychnine. There is no evidence that he ever had any strychnine.    The only evidence produced was that he was once seen in a druggist's store looking at jars containing various medicines, and among others, one that contained this poison.    There was no poison found in his body when submitted to a post-mortem examination.    And as to the convulsions at his death, the wife attributed them to injuries which he had received in his back a few days before.    That is all.    Everything else consisted of mere suspicions growing out of the action of the wife in refusing to consent to a post-mortem examination of the deceased, and her departure from the State, both of which might have been, and, according to her answers to the interrogatories of the bill, were prompted by worthy considerations.    The transactions with which she is charged as proof of guilty complicity,

viewed in the light of her explanations and the evidence pro-
duced, merely evince a very natural sensitiveness to the impu-
tations cast upon the character of her husband by suspicions
thrown out by agents of the insurance company, and a great
repugnance to having his remains, after interment, disturbed
and subjected to the knife of the surgeon and the analysis of
the chemist. It is sufficient to say that no case is presented
which would justify any court in holding that a conspiracy ex-
isted to defraud the insurance company, the execution of which
involved the suicide of the insured, and the assent of wife and
son to the death of husband and father.

Aside from this, the judgment in the action at law was a bar
to this suit. Its recovery concluded all matters which might
have been urged as a defence to the policies. A fraudulent
purpose in procuring them, subsequently carried into execu-
tion, would have been a good defence. It was in fact originally
pleaded and afterwards withdrawn. Its withdrawal did not
authorize a suit in another forum for its establishment against
the demand of the plaintiff. When an action at law is brought
upon a contract, the defendant denying its obligation, either
from fraud, payment, or release, or any other matter affecting
its original validity or subsequent discharge, must present his
defence for consideration. A recovery is an answer to all future
assertions of the invalidity of the contract by reason of any
admissible matter which might have been offered to defeat the
action. The contract is merged in the judgment. *Cromwell* v.
*County of Sac*, 94 U. S. 351.

A suit in equity will not lie to give effect to defences against
a claim when they might have been fully set up in an action
at law. There must have been some fraud practised upon the
court or some unconscientious advantage taken of the defendant
without any fault or negligence on his part; or there must be
some newly discovered evidence which could not have been
obtained at the trial, and which, if produced, would have
changed the result, before a court of equity will interfere with
the judgment rendered or the contract upon which it was re-
covered. There is no pretence here that any such fraud wa"
committed or unconscientious advantage taken, or that there is
any newly discovered matter not known when the trial took

place.  *Home Insurance Co.* v. *Stanchfield*, 1 Dill. 424; *Marine Insurance Co.* v. *Hodgson*, 7 Cranch, 332; *Phœnix Insurance Co.* v. *Bailey*, 13 Wall. 616.

*Decree affirmed.*