## HENDERSON v. MOUND COAL CO.

(Circuit Court of Appeals, Third Circuit. September 24, 1910. On Motion for Reargument, October 11, 1910.)

No. 30, March Term, 1910.

BONDS (§ 128*)—EVIDENCE (§ 460*)—ACTION FOR BREACH—IDENTITY OF CONTRACT THEREIN REFERRED TO—ISSUES AND PROOF.

In an action on a bond given by the lessee of a coal mine and conditioned for the performance of the lease therein referred to, defendants, who were the sureties, denied that the lease set up in the statement of claim was the one secured and attached to their affidavit of defense a copy of another which they alleged was the one secured. On the trial, plaintiff produced a lease which was not attached to the bond, but by its terms required a similar bond, and this was admitted in evidence over defendant's objection. Held that, while such lease by reason of its conformity to the recitals in the bond may have been properly admitted as prima facie the one secured, it was not conclusive, and, its identity having been put in issue, defendants were entitled to show that another lease, unsigned, of even date, but differing materially in its terms, was the one shown them by defendants previous to the execution of the bond, and that they signed the latter on plaintiff's assurance that such lease was the one that had been signed; that the offer of such evidence was not an attempt to set up an equitable defense, nor to vary the contract by parol, but that it went directly to the issue as to the identity of the lease, which was an essential part of the contract sued on.

[Ed. Note.—For other cases, see Bonds, Cent. Dig. §§ 205–217; Dec. Dig. § 128;* Evidence, Cent. Dig. § 2116: Dec. Dig. § 460.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by the Mound Coal Company against one Henderson and others. Judgment for plaintiff, and defendants bring error. Reversed.

A. L. Cole, for plaintiffs in error.
David A. Reed, for defendant in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. This was an action for $15,000, the penal sum named in a bond in which one J. E. Hedding (not sued) was principal, and the defendants were sureties, of which a copy will be found in the margin.[1] The bond bears date October 19, 1905, and, according to the recitals contained in it, was given in pursuance of the requirements of a coal lease between the plaintiff and Hedding, which called for a bond in the sum named, "conditioned to indemnify the said company [the plaintiff] against loss arising from any breach of said contract, and against the abandonment of said property." And, in conformity with this, it was there in substance agreed that if Hedding as lessee should well and truly keep the covenants required to be performed by him, and should not surrender or abandon the said lease or mine, without the consent of the plaintiff, the obligation should be void, or otherwise be and remain in full force and virtue. The lease was not attached to the bond, but the plaintiff produced at the trial a lease of even date and conforming terms, by which it was, among other things, provided that:

"Upon delivery of this lease, duly executed, the lessee shall give bond in the penalty of fifteen thousand dollars, conditioned to indemnify the lessor against any and all loss or damage arising from the breach by the lessee or his assigns, of any covenants herein contained, and further conditioned for the payment by the lessee to the lessor of the sum of fifteen thousand dollars in case this lease, without the consent of the lessor, should be sur-

---

[1] Know all men by these presents, that we, J. E. Hedding, H. C. Shugert, Charles D. Ames, James P. Spackman, Henderson & Schneider, are held and firmly bound unto the Mound Coal Company, a corporation of the state of West Virginia in the just and full sum of fifteen thousand dollars ($15,000), to the payment whereof well and truly to be made to the said Mound Coal Company as aforesaid, we bind ourselves, our executors, administrators and assigns, jointly and severally, firmly by these presents. Sealed with our seals and dated this 19th day of October, 1905.

The condition of the above obligation is such, that whereas, the above named Mound Coal Company has this day demised to the said J. E. Hedding, for the term of twenty years, beginning January 1, 1906, the coal mine now owned and operated by said company, in the city of Moundsville, West Virginia, together with certain other property therein mentioned, which lease bears even date herewith, and is intended for record in the office of the Clerk of the county court of Marshall county, West Virginia.

And whereas the said lease requires the said Hedding to execute and deliver to the said Mound Coal Company a bond in the penalty of fifteen thousand dollars, conditioned to indemnify the said company against loss arising from any breach of said contract and against the abandonment of said property.

Now, therefore, if the said J. E. Hedding, his heirs, personal representatives or assigns, shall well and truly keep all covenants of the said lease required to be performed by the lessee therein, and shall not surrender nor abandon the said lease or mine without the consent of the said Mound Coal Company, its successors or assigns, then the above obligation to be void, otherwise to remain in full force and virtue.

| J. E. Hedding. | [Seal.] |
| H. C. Shugert. | [Seal.] |
| Charles D. Ames. | [Seal.] |
| James P. Spackman. | [Seal.] |
| Henderson & Schneider. | [Seal.] |

rendered or abandoned by the lessee or his assigns, before the termination of the lease; it being intended that in the event of such abandonment the said sum of fifteen thousand dollars shall be paid to the lessor as liquidated damages in addition to the actual damages caused by any default of the lessee. Good and sufficient sureties shall be given on such bond, and if such security should become impaired, further security shall from time to time be given, to the reasonable satisfaction of the lessor."

On the strength of the provision there found, that in the event of an abandonment by the lessee the damages should be liquidated at $15,-000, which should be in addition to the actual damages caused by any default, the plaintiff claimed and was allowed to recover the full amount of the bond; the court overruling the defenses attempted to be made to it.

The contention of the defendants is that the lease which the plaintiff produced was not the one for which they became surety, and that there was another and different lease, bearing the same date and in other respects similar, but varying from the one introduced in evidence in having no provision for liquidated damages in case of abandonment, either $15,000 or any other sum, a fact which they put in issue by their affidavit of defense, a copy of this other alleged lease, to that effect, being attached to it. And objection was made upon this ground to the lease offered by the plaintiff at the trial. The lease produced having been nevertheless received over their objection, the defendants, when their side of the case was reached, offered to prove, in support of their contention, by Mr. Henderson, one of their number, that he was called to Clearfield, Pa., in December, 1905, to meet Col. Colburn, the agent of the plaintiff company, at which time a lease with Hedding was exhibited to him, bearing date October 19, 1905, which lease was then in his possession; that a request was made by Colburn and Hedding that he (Henderson) join in a corporation which was to be formed to operate under the lease so exhibited; that, in pursuance of this conversation, he went to Moundsville to look at the property covered by the lease, accompanied by Col. Colburn, the agent of the plaintiff company, and Mr. Ames, another of the defendants; that, after examining the property, he was asked to sign a bond, which was called for in the lease shown to him at Clearfield, and that, on the assurance by Col. Colburn that the lease which had been so shown to him was the lease under which the proposed corporation was to operate, he signed the bond in suit in the firm name of Henderson & Schneider; that the lease attached to the plaintiff's statement of claim was not the lease which was exhibited to him, but was a new and substituted lease, calling for liquidated damages as a newly incorporated feature not found in the original, the lease exhibited to him at Clearfield being a lease between the plaintiff and Hedding, which had not been executed, but the terms of which Col. Colburn informed him at the time he signed the bond had not been changed, assuring him that the lease which was to be transferred to the corporation to be formed was the same in substance as that previously shown him. This offer was objected to by the plaintiff (1) because it was an attempt to introduce an equitable defense in an action at law; (2) because the witness admitted that he had signed the bond; and (3) because it was an attempt to vary the terms of the bond by parol. The

court sustained these objections and excluded the evidence, and this ruling is assigned for error.

The lease was not attached to the bond, and the only identification of it was its correspondence with the recitals in that instrument. If there was but one lease to which these recitals could apply, it would prove itself by its own terms, but, if there was more than one and there was any dispute about it, it was incumbent on the plaintiff to establish that the one produced was the one referred to. Apparent conformity might be sufficient for the purpose in the first instance, and the court was probably right, therefore, in allowing the lease produced by the plaintiff to come in as prima facie the one, notwithstanding the defendants' objection. But it was not conclusive, and, if issue was made on it, it was open to the defendants to contest and controvert it. This was done in the affidavit of defense which was filed, where it was in substance averred, the same as it was in the defendants' offer, that prior to the signing of the bond another lease, bearing the same date, and of the same general tenor, but differing in this material respect, that there was no provision with regard to the damages for abandonment being liquidated at $15,000, nor, indeed, anything on the subject, was exhibited to them, a copy of which lease was attached to the affidavit, and that the assurance was given at the time of signing the bond that this was the lease that the bond was given for, the defendants being induced to sign on the strength of that. This raised an issue of fact on the question of identity, if nothing further, on which the defendants were entitled to give evidence, and upon a proper showing to go to the jury, and it was error to reject the offer of evidence which has been quoted, which was in line with it. This was not an equitable defense, as it was charged, but went directly to the question of what the defendants were obligated for, the bond, as it stood, not being complete in itself, but being dependent on the lease which was there referred to, for which it was given, this being in controversy. Neither was this proof to be shut out, because the signing of the bond was admitted; the mere fact that the defendants executed the bond not preventing them from showing what it stood for. Much less was the evidence offered an attempt to vary the bond by parol; it being always competent where there is any question to identify by parol the subject-matter of a contract within the terms of it. 21 Amr. & Eng. Encycl. Law (2d Ed.) 1119. Ranney v. Byers, 219 Pa. 332, 68 Atl. 971, 123 Am. St. Rep. 660. And this applies where one writing is referred to in another. 16 Cyc. 670. It is said that the lease which the defendants set up was never executed, as is apparently conceded in the offer, but for the present we have nothing to do with that; also, that it does not comport with the terms of the bond, which recognizes as a requirement of the lease that indemnity shall be given, not only against loss for a breach, but also against the abandonment of the property, which is not found in the lease relied on by the defendants. This is more serious, but we do not think it is before us. The offer has to be taken as it reads, and is silent upon this subject, and, so taken, the defendants were entitled to prove it.

It is further urged that the evidence offered was admissible, because, if true, it showed fraud in the procurement of the bond, which had

the effect of avoiding it; but the right to make this defense in an action at law is disputed, the fraud not entering into the immediate execution of the bond, but merely going to the means employed in securing it, and may be regarded as doubtful. Hartshorn v. Day, 19 How. 211, 15 L. Ed. 605; George v. Tate, 102 U. S. 564, 26 L. Ed. 232; Mutual Life Insurance Co. v. Webb, 157 Fed. 155, 84 C. C. A. 603. Although see Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Life Insurance Co. v. Bangs, 103 U. S. 780, 26 L. Ed. 608; Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451; Equitable Life Assurance Society v. Brown, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682; Wagner v. National Life Insurance Co., 90 Fed. 395, 33 C. C. A. 121. It is not necessary, however, to the disposition of the case to determine this question, and we will not therefore undertake to do so. And the same may be said of the other similar offers of evidence, the rejection of which is also assigned for error.

Neither do we feel called upon to decide whether the stipulation in the lease, which the plaintiff relies on, by which the damages for abandonment are liquidated at $15,000, is, after all, nothing but a penalty, being in addition, as it is said, to the actual damages. The lease where this appears is not, according to the defendants, the one for which they agreed to be bound, and, if they succeed in this contention, there will be no occasion to construe it. It will be time enough to determine its meaning when the objection made to it proves unavailing.

The judgment is reversed, and a new trial is awarded.

## On Motion for Reargument.

PER CURIAM. As pointed out in the opinion already filed, it was error to reject the offer of evidence by which the identity of the lease which the plaintiffs rely on was called in question. The rejection of this offer is the subject of the fifth assignment, and is fully covered by it. This is the only point decided, but it is vital. Nor was any question made by the plaintiffs at the argument but that it would be, if it was held against them. It is true that only in the affidavit of Henderson and Schneider is there a denial that the lease, which is asserted by the plaintiffs, was not the one for which the defendants became liable. But it is difficult to see how the issues so made could be ignored as to the other defendants. Ames was not served and filed no affidavit, and the affidavits of Shugert and Sackman were directed to other matters; but, taking the affidavits all together, they are not so unrelated that they cannot be conjointly relied on. The defendants are sued jointly, and if they are to be jointly held a case good against them all must be established. And if the lease on which the plaintiffs rely is disproved as to any, it is disproved as to all, and there can be no recovery. This was practically involved in what we said before, but these observations may serve to make it a little plainer.

The petition for a rehearing is refused.